IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO.: 2:13-CV-0004-FL

| | |
|---|---|
| HOWARD LEE ALEXANDER, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DEs 20, 22). The time for filing any responses or replies has expired and the motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 20) be GRANTED, that the Defendant's Motion for Judgment on the Pleadings (DE 22) be DENIED and that the Commissioner's final decision be vacated and remanded for further proceedings.

**I. STATEMENT OF THE CASE**

Plaintiff protectively filed an application for disability insurance benefits and supplemental security income on November 12, 2008, alleging a disability onset date of June 15, 2006. (Tr. 123–30). His claim was denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on September 6, 2011 and, in a decision dated October 20, 2010, the ALJ denied Plaintiff's application. (*Id*. 13–21). The Social Security Administration's Office of Disability Adjudication and Review Appeals Council ("AC") denied

Plaintiff's request for review on December 19, 2012, thus making the ALJ's decision the final decision in this matter. (*Id*. 1–6). Plaintiff appealed that decision to this Court on January 18, 2013. (DE 1).

## II. STANDARD OF REVIEW

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . .

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

2

**III. ANALYSIS**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

*Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).

The ALJ followed the sequential evaluation in this case. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended onset date, November 21, 2008. (Tr. 15). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; degenerative joint disease; hypertension; hepatitis C; glaucoma; and cataracts. (*Id*). However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*). Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with postural and environmental limitations. (*Id*. at 16). Specifically, the ALJ found that Plaintiff is able to: stand and/or walk up to 8 hours in an 8 hour workday; sit up to 8 hours in an 8 hour workday; lift and/or carry 25 pounds frequently and 50 pounds occasionally; and push/pull up to the weight

3

capacity for lifting and carrying. He found the Plaintiff is limited to: occasional balancing and climbing; occasional work at heights or around dangerous machinery; and frequent kneeling, couching and crawling. The ALJ found that Plaintiff is unable to perform any past relevant work. (*Id*. at 19). Considering Plaintiff's age, education, work history and RFC, the ALJ determined that there were jobs in significant numbers in the national economy which Plaintiff was capable of performing. (*Id.* at 19). These include dining room attendant; kitchen cleaner; and hospital cleaner. (*Id*. at 20). Accordingly, the ALJ found that Plaintiff had not been under a disability during the relevant time period. (*Id)*.

Plaintiff's contends presently that the ALJ's erred in finding that he is capable of performing medium work, which requires standing or walking 8 hours per day, and that he erred by not finding Plaintiff disabled under Grid Rule 201.04.

*A. Evidence before ALJ*

The undersigned has reviewed the entire record, the relevant parts of which shall now be highlighted.

*1. Plaintiff's testimony*

At the hearing, Plaintiff testified that he is 61 years old and that he lives with his mother. (Tr. 29). His past work included work in construction, as a machinist and on a farm. (*Id*. at 30–31). In these jobs he engaged in heavy lifting. (*Id*). Plaintiff testified that he started having problems with his knees and pain down his legs, for which he was given medication, steroid injections, therapy and support items, including braces and stockings. (*Id*. at 31). He testified that his leg problems continue and a physician discussed knee replacement. (*Id*. at 31–32). He stated that he experiences swelling, which requires him to elevate his legs for 30–60 minutes. (*Id*. at

4

32–33). He does this 4–5 times a day. (Id. at 33).

Plaintiff also testified that he had problems with his back, for which he received injections, medication, a TENS unit, and physical therapy. (*Id*). He further stated that he has glaucoma, which makes his vision blurry, and shortness of breath. (*Id*. at 34–35). He admitted cocaine use in 2008. (*Id*). Plaintiff testified that he has walked with a cane since 2008 and that it helps him keep his balance. (*Id*. at 36). He stated that he has trouble sitting with his feet flat for more than 10–15 minutes because his back and knees begin to hurt. (*Id*). Plaintiff further stated that he has difficulty standing for more than 10–15 minutes because it hurts his back and lower extremities. (*Id*). He experiences discomfort and shortness of breath when walking, and has to stop and rest every now and then. (*Id*. at 37). He avoids stairs and cannot lift and carry as much as he had in the past. (*Id*).

Plaintiff testified that he takes out the garbage once a week, that it takes him time to wash a few dishes and that he does not cook. (*Id*. at 38). He also stated he has difficulty sleeping because of the pain in his knees and back. (*Id*).

*2. Medical Evidence*

The parties do not dispute the medical evidence of record, which will be highlighted.

In May, 2008, Plaintiff was seen in the Emergency Room complaining of bilateral leg pain. He was subsequently examined in June, 2008 where the following observations were made: no acute distress, normal ROM of knees and spine and normal gait; bilateral crepitus with flexation in both knees; and x-rays were normal. Plaintiff reported only some relief from pain with NSAIDs.

Plaintiff presented to the ER again in July, 2008 with a slight limp, left leg numbness and

5

lower back pain. He had positive straight leg test as well as decreased sensation in his left leg. He was given an injection inasmuch as he reported NSAIDs provided minimal relief. An x-ray indicated anterior spurring at L4-5. An MRI revealed degenerative disc disease at L4-5 with posterior annular tears and mild to moderate central spinal and lateral stenosis as well as broad range disc bulge.

In September, 2008 Plaintiff agin was experiencing bilateral knee pain, which he rated as 7/10. Pressure on his patella resulted in pain and he had crepitus in his knees. In October, 2008, Plaintiff was again experiencing bilateral knee pain. Although the medical record reports that he ambulated well, it states that Plaintiff had increased pain when standing and first walking after being seated. The record further notes crepitus in both knees, bilateral medial joint line tenderness, and patellar spurring on the left knee. He was diagnosed with early osteoarthritis and given a cortisone injection. Plaintiff went to the ER again in November, 2008 complaining of bilateral knee pain, for which he was given a brace and medication.

In April, 2009, Plaintiff complained of bilateral knee pain and reported that injections provided him relief for approximately two months. Records show he had crepitus without effusion and visible quadricep atrophy. He was diagnosed with bilateral osteoarthritis and given medication, injections, a brace and referred for physical therapy. In May, 2009, Plaintiff went to physical therapy, as recommended. He complained of knee and back pain, and was observed to have a slow antalgic gait as well as a slight decrease in ROM, reduced strength in his knees, and experienced tenderness to palpitation in his knees and lower back. He was given a Tens unit and it was recommended that he use a cane. Plaintiff had a consultative physical examination with Dr. Samia on May 21, 2009. Dr. Samia noted, *inter alia.*, full ROM of spine and upper and lower

6

extremities and that Plaintiff used a cane for balance but also for weight-bearing. Plaintiff was able to perform the heel-toe walking but had difficulty with the tandem walk. Dr. Samia diagnosed osteoarthritis in both knees. Dr. A.K. Goel performed a consultative review in June, 2009 and noted there was no medical reason for Plaintiff to use a cane, and that Plaintiff had reported he could walk 100 yards and lift 50 pounds.

In July, 2009, Plaintiff again complained of knee and back pain, and was referred to a pain clinic. Later that month, one day after receiving an injection, he reported to PT that he woke up in excruciating pain. Treatment consisted of a Tens unit, brace and cane. In September, 2009, the pain clinic noted that he had lower back and radicular pain, which was exacerbated by sitting, walking and standing but was improved with lying down. He had numbness in his toes, positive straight leg raises, positive Patrick signs and tenderness to palpitation in his back.

There is approximately a two year gap in medical treatment before Plaintiff was next seen in June, 2011 in the ER complaining of left knee and calf pain, which was diagnosed as a Baker's cyst, post-rupture. In July, 2011, Plaintiff was ordered new compression stockings. Bilateral knee x-rays showed soft tissue fullness involving the patellar tendon and early patellar femoral compartment osteophyte formation on the left.

*B. Is there substantial evidence to support a finding that Plaintiff can perform medium work?*

Plaintiff first argues that there is not substantial evidence in the record to support a finding that he has the RFC consistent with medium work. Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). SSR 83–10 further defines medium work as follows:

7

> A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8–hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e. g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83–10, 1983 WL 31251, at *6.

A consultative opinion was provided by Dr. Goel on June 16, 2009. (Tr. 289–96). After reviewing the relevant medical evidence, Goel filled out an form RFC assessment, which consisted of checking boxes as to Plaintiff's abilities or limitation, and well as listing the medical evidence reviewed in formulating the RFC. (*Id*). Goel opined that Plaintiff was able to perform medium work, that he could frequently lift 25 pounds and occasionally lift 50 pounds, and that he could stand and/or walk, as well as sit, up to 6 hours in an 8 hour workday.

The evidence supporting the conclusion that Plaintiff can perform medium work is limited. While not specifically addressing Goel's opinions, the ALJ impliedly adopted them in finding that Plaintiff was capable of medium work. The opinion of such a non-examining medical source is generally given less weight than that of an examining source. *See Johnson v..*

8

*Barnhart*, 434 F.3d 650, 657 (4th Cir.2005); 20 C.F.R. § 404.1527(d)(1), (f). However, the Fourth Circuit has observed that "the testimony of a non-examining physician can be relied upon when it is consistent with the record." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

The substance of the medical record as a whole is replete with instances supporting Plaintiff's allegations lower extremity and lower back pain. The record contains objective and diagnostic reports indicating problems in these areas. For instance, Plaintiff had positive straight leg raises; positive Patrick signs; crepitus in both knees; bilateral medial joint line tenderness, and patellar spurring on the left knee; difficulty with the tandem walk; soft tissue fullness involving the patellar tendon and early patellar femoral compartment osteophyte formation. He also had anterior spurring at L4-5; degenerative disc disease at L4-5 with posterior annular tears and mild to moderate central spinal and lateral stenosis as well as broad range disc bulge; and tenderness to palpitation in his back. He was diagnosed with osteoarthritis. It is not surprising that, at his advanced age, he experiences the effects of the considerable exertion involved in his past work. Moreover, while the treatment he received for his lower extremity and lower back pain, including physical therapy, medications, injections, compression stockings and braces may be characterized as conservative, it was also noted that the treatment provided him only limited relief. Considering that medium work requires standing and/or walking up to 6 hours in an 8 hour day, with frequent stooping and crouching, such function is inconsistent with the medical evidence of record.

The ALJ's determination is also undermined by the finding that Plaintiff was able to perform the "tandem walk and the heel and toe walk without difficulty." (Tr. at 18). This is incorrect. The medical records indicate that although he was able to perform the heel and toe

9

walk, Plaintiff had some difficulty performing the tandem walk. Further, the ALJ determined that Plaintiff's complaints of pain were belied by his activities of daily living, including preparing meals, performing light household chores, attending church, watching television and using public transportation. However, such activities are not inconsistent with his averred lower back and lower extremity impairments and do not require significant standing and/or walking as contemplated in his RFC.

Accordingly, there is not substantial evidence to support a finding that Plaintiff is capable of performing medium level work. Thus, remand to the Commissioner for further consideration is appropriate.

*C. Grid Rule 201.04*

The Medical–Vocational Guidelines (the "Grids") "contain numbered table rules which direct conclusions of 'Disabled' or "Not disabled" where all of the individual findings coincide with those of a numbered rule." SSR 83–12, 1983 WL 31253, at *1 (S.S.A. 1983); *see* 20 C.F.R. Pt. 404, Subpart P, Appendix 2. Rule 201.04 directs a finding of disabled where a claimant has an RFC limited to sedentary work and (1) is of advanced age; (2) has a high school education or more, which does not provide for direct entry into skilled work; and (3) has no or unskilled previous work experience.

Having found that the medical evidence of record does not support a determination that Plaintiff is capable of medium work does not necessarily direct a finding of disability under Grid Rule 201.04. Rather, a finding must be made as to whether Plaintiff's exertional level is appropriately categorized as medium, with limitations on standing, walking, or other matters; light; or sedentary. Only upon a finding that Plaintiff retains the RFC to perform sedentary work

10

is a finding of "disabled" directed under Grid Rule 201.04. However, it is not within the scope of review for this Court to ascertain Plaintiff's RFC. Thus, remand to the Commissioner for further findings on this issue is necessary.

## IV. CONCLUSION

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 20) be GRANTED, that Defendant's Motion for Judgment on the Pleadings (DE 22) be DENIED, and that the decision be vacated and remanded for further consideration consistent with the findings above.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on March 12, 2014.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE